KLEES, Judge.
On January 17, 1979, defendants, Mr. & Mrs. James Goodlet entered into a purchase agreement to acquire the home of Mr. & Mrs. Robert Rubrecht, located at 828 Sherrie Lynn Court in Gretna, Louisiana.
The agreement provided that the sale was conditioned upon the ability of the defendants obtaining financing in the amount of $51,200.00 at a rate of interest not to exceed 10% per annum, payable over a period of not less than 30 years. It further stated that should purchaser, seller or agent be unable to obtain the loan stipulated above within 30 days from the acceptance of the offer, the contract shall become null and void and the agent is authorized to return the purchaser’s deposit in full.
In addition, the purchase agreement provided for a deposit in the amount of $6,400.00 ($3,200.00 cash and a $3,200.00 demand note). The check for the deposit was returned dishonored on January 25, 1979 and again on February 15, 1979.
Petitioners, Mr. & Mrs. Robert Rubrecht and Stan Weber and Associates, Inc., filed suit seeking $6,400.00 for the deposit, $1,900.00 in agent’s commissions, attorney’s fees, costs and interest. The trial judge ruled in favor of the defendants dismissing the plaintiffs’ demands. From this judgment plaintiffs have appealed.
On appeal the issues before us are whether the defendants’ failure to provide a deposit constituted an express breach of the agreement, and whether the trial judge erred in finding the defendants made a good faith effort to obtain financing.
We will deal with the latter contention first. The record reveals that defendants made application at Fidelity Homestead Association on January 23, 1979, and on January 24,1979, were issued a letter by Fidelity Homestead Association approving their loan application subject to a CAB appraisal and verification of 1978 income for approval. This was accepted by the defendants. Later, on February 13, 1979, the homestead in a letter to defendants indicated that it had received data from defendant’s accountant, Mr. Charles R. Willingham, Jr., but that the amount stated was insufficient and the homestead indicated that it wanted verification of 1978 earnings. No verification was sent to the homestead.
Nonetheless, the trial judge considered ample, evidence which he believed to be a good faith effort on the part of the defendants to obtain financing. In summation he stated:
“The Court is convinced that defendant furnished the homestead all earning data he had available in February, 1979, but that this data did not satisfy the homestead to the extent that it would issue an unconditional commitment. On January 23, 1979 defendant did, in his application to Fidelity Homestead, indicate that his earnings were approximately $4,650.00 per month. This was not inconsistent with his uncontradicted testimony wherein he stated that he would have had this income had his accounts receivable paid as anticipated and as they became due. No fraud or misrepresentation is found on the part of the defendant.”
We find that the evidence supports the trial court’s conclusion of good faith and his ruling should not be disturbed.
Finally the plaintiffs contend that the failure of the defendants to provide the required deposit constituted an express breach of the agreement in and of itself entitling them to the deposit plus agent’s commission, attorney’s fees, and costs of litigation.
The trial court correctly found that the defendants failed to properly make the deposit as called for in the agreement to buy and sell, but would be entitled to reimbursement if it were made since the loan was not granted, “through no fault of his”.
This is in line with Richmond v. Krushevski, 243 La. 777, 147 So.2d 212 (1962). There the Supreme Court was faced with an analogous factual situation and after a careful evaluation of our civilian law held that the penalty to perform the principal obligation, i. e., the loss of the deposit, is a secondary obligation and when the principal *747 obligation becomes null and void the secondary obligation also becomes null and void. LSA-C.C. 2117, 2118, 2125, 2123.
According to the terms of the agreement in this case, as in Richmond, supra, the principal obligation to purchase the property became null and void and ceased to exist when the loan could not be obtained in the time specified, and under the principles above set out, the secondary penal clause, i. e., the deposit, also became null and void, and ceased to exist and is unenforceable.
The issue of the attorney’s fees, commissions, and costs sought under the terms of the contract arising from failure of compliance with its terms was dealt with in Kansas v. Schaeffer, 299 So.2d 474 (La.App. 4th Cir. 1974). The Court specifically rejected these claims. The language of the Court was as follows:
“We reject all parties claims to attorney’s fees, commissions, and costs, sought under the terms of the contract arising from failure of compliance with its terms.” “This agreement by its very terms becomes null and void when there is no fulfillment of the suspensive condition. When a contract is null and void, it is as if the agreement was not written. The parties revert to their respective positions before they signed the agreement.” Garlete v. Rodriguez, 126 So.2d 182 (La.App. 4th Cir. 1961). “There can be no failure of compliance with an agreement that has become null and void, nor can any rights flow from such an agreement.” Richmond v. Krushevski, 243 La. 777, 147 So.2d 212 (1962).
For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.