CHASEZ, Judge.
Plaintiff, the Swanola Club, filed suit against Dr. John Tanner for breaching a contract wherein defendant agreed to pay $300 for his minor daughter to participate as a maid in the 1966 carnival ball of the Krewe of Alpheus, sponsored by plaintiff corporation. The petition alleged that defendant paid a $50 deposit upon signing the agreement in August 1965, but failed to pay the balance of $250 due on or before December 15, 1965. Plaintiff alleged that approximately one month after the contract was confected, defendant notified the carnival organization his daughter would not participate.
Defendant admitted entering into the agreement, but denied any liability because plaintiff failed to tender performance of its obligation under the agreement, namely, in furnishing his daughter with a ball gown, a crown, a gift from the krewe and invitations to the ball.
Plaintiff appealed from a judgment dismissing its suit.
The facts are not disputed. After the contract was signed in August, defendant’s daughter was measured for her ball gown by the krewe dressmaker. Approximately one month- later defendant notified the captain of the krewe that his daughter would not participate in the ball because it might interfere with her school work. The captain told Dr. Tanner he would take the matter under advisement. Then, according to defendant, he later received a letter from plaintiff’s captain “* * * stating that he would insist upon my daughter’s participation and he expected me to fulfill the letter of the law of this contract”. It is interesting to note that despite the daughter’s heavy schedule at college, she managed to participate as a maid in a ball sponsored by another organization that same carnival season.
This suit was filed in August 1966, approximately six months after the ball was held. In dismissing it, the trial court in written reasons termed this a suit for specific performance of the contract and limited plaintiff’s recovery to retention of the $50 deposit.
The written contract upon which this litigation is based provides in part:
“Should the said- failed to promptly pay the credit portion of the consideration hereinbefore stipulated the Swanola Club, Inc. (Krewe of Alphéus) reserves the option either to cancel the agreement and retain the cash portion paid as liquidated damages, or, in the alternative, to enforce payment of the entire consideration. Should the claim be placed in the hands of an attorney for collection or legal proceedings, - agrees to pay an additional sum of 20% of the amount due on the balance of principal and interest as attorney’s fees.”
In our view the above quoted language is the law between the litigants in the instant case under LSA-C.C. Art. 1945 that provides in part:
“Legal agreements, having the effects of law upon the parties, none but the parties can abrogate or modify them.
Thus, under the quoted provision, the contracting parties agreed that plaintiff had two options in the event defendant breached the contract, i.e. (1) plaintifff *175 could have cancelled the agreement and retained the deposit or (2) the organization could enforce payment of the entire consideration if it did not elect to cancel the contract. The record reflects that after defendant actively breached the agreement by stating his daughter would not participate, plaintiff did not in turn cancel its agreement. Although the trial court in written reasons for judgment stated “* * * it must he concluded that after the defendant’s notification of withdrawal, nothing further was done by the plaintiff except to demand payment of the balance due under the contract. The defendant was never advised of the rejection of his daughter’s withdrawal, * * the record clearly reflects this conclusion of fact is erroneous. Defendant himself admitted to receiving a letter from the plaintiff’s captain calling upon him to fulfill the contract after defendant informed the captain of his intent not to perform. In addition, the record reflects that this organization customarily has eight maids in its ball, but in 1966, the number was reduced to seven by defendant’s default. Had defendant’s daughter been replaced, we might agree this was tantamount to plaintiff’s exercising the first option of the contract, namely, cancelling it.
However, it is clear the plaintiff chose to enforce payment of the entire consideration due by defendant and never assented to his breach.
Defendant has argued that plaintiff was not entitled to the full contract price because plaintiff never tendered performance by delivering the ball gown and other articles outlined in the agreement. It is his position that under Article 1913 of the Civil Code plaintiff was required to place defendant in default by tendering performance.
We find no merit in this contention. That article applies to commutative contracts “* * * where the reciprocal obligations are to be performed at the same time, or the one immediately after the other * * An example of the mutual obligations contemplated by this article is the contract of sale where the seller must deliver title to the purchaser who, at the same time, is obligated to pay the consideration.
We conclude that plaintiff was relieved from putting defendant in default after defendant stated he did not intend to perform. When one contracting party announces he will not honor his agreement, the other is not required to tender performance because the law does not require the performance of a vain and useless act. Defendant’s repudiation of his agreement constituted an active breach which relieved plaintiff of any obligation to place defendant in default as a prerequisite to filing suit to enforce the contract. LSA-C.C. Article 1932 provides:
“When there is an active violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action.”
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Swanola Club, and against the defendant, Dr. John Tanner, in the full amount of $250, plus interest from judicial demand until paid and 20% attorney’s fees on the principal and interest. Defendant is to pay all costs of these proceedings.
Reversed and rendered.