333 So.2d 689 (1976)
Mrs. Phyne C. LIUZZA
v.
James D. PANZER and Damien Kinchen.
No. 7473.
Court of Appeal of Louisiana, Fourth Circuit.
June 9, 1976.
*690 C. Monk Simons, III, New Orleans, for plaintiff-appellee.
Arnold & Giepert, Melvin J. Giepert, New Orleans, for defendant-appellant, James D. Panzer.
Before SAMUEL, GULOTTA and MORIAL, JJ.
GULOTTA, Judge.
Defendant-buyer appeals from a judgment in the sum of $3,750.00, representing the amount of defendant's deposit made in connection with the purchase of real property.
Plaintiff-seller and defendant-buyer entered into a buy and sell agreement for the sale of real property located in Hammond, Louisiana, at a price of $37,500.00. The agreement, dated April 27, 1973, was a standard real estate form contract and contained the usual provision that the sale was conditioned upon the ability of the purchaser to borrow $30,000.00 on the property at an interest rate not to exceed 9%.
*691 The agreement contained the additional provision that:
"Should purchaser or seller be unable to obtain the loan stipulated above within 60 days from acceptance hereof, this contract shall then become null and void and the broker is hereby authorized to return the purchaser's deposit, in full. Commitment by lender to make loan subject to approval of title shall constitute obtaining of loan."
Both parties to the agreement were represented by realtors. The deposit was placed with plaintiff-seller's agent.
Following the agreement, defendant-buyer applied to the Pontchatoula Homestead for the $30,000.00 loan. However, the homestead appraised the property at $32,151.20, and would only lend defendant 80% of the appraisal price or approximately $25,000.00. Subsequent to the failure of the homestead to approve the $30,000.00 loan request, defendant, in a letter written to his real estate agent, suggested that the $37,500.00 purchase price be renegotiated and reduced to the sum of $35,000.00. Defendant-buyer's real estate broker, by letter, submitted the offer for renegotiation to the seller, who apparently orally accepted the offer.
The trial judge, in written reasons, concluded the litigants verbally agreed to the reduced purchase price and that defendant made no effort to obtain a loan at the newly agreed figure. Accordingly, the trial judge concluded that defendant breached the purchase agreement.
On appeal, defendant contends the trial judge erred in concluding that a valid modification of the original purchase agreement was entered into. According to defendant, agreements for the purchase and sale of real estate must be in writing. Therefore, defendant contends that since the written offer by the purchaser to renegotiate the sale at a reduced price was not accepted in writing, no valid contract was made for the purchase of the real property at the reduced price. We agree.
Our jurisprudence is well settled that agreements to buy and sell real estate must be in writing to be binding and enforceable. Klotz v. Gertrude Gardner, Inc., 293 So.2d 601 (La.App. 4th Cir. 1974), writ refused, 296 So.2d 831 (La.1974). See LSA-C.C. arts. 2275, 2439, 2440 and 2462. In Torrey v. Simon-Torrey, Inc., 307 So.2d 569 (La. 1974), the Louisiana Supreme Court stated that the rule "allowing proof by parol evidence of a subsequent agreement to modify or to revoke a written agreement, is not applicable to a case in which the agreement is one required by law to be in writing". In the instant case, we conclude the written offer to purchase at a reduced price, verbally accepted by the seller, did not constitute a valid agreement to modify the original purchase agreement.
Based on his conclusion that defendant failed to make a good faith effort to obtain financing, the trial judge concluded that defendant breached the purchase agreement.
The agreement states that the contract shall become null and void in the event the purchaser or seller is unable to obtain the loan stipulated within 60 days from the date of the acceptance, i.e., April 27, 1973. Defendant's real estate broker testified that defendant made no attempt to arrange a loan at any financial institution other than Pontchatoula Homestead. Defendant also stated that he made no attempts to obtain further financing because he had been advised that lending institutions would not lend in excess of 80% of appraised value.
It is well settled that a provision making a sale of real property contingent upon the purchaser's obtaining a loan imposes a duty upon the purchaser to make a good faith application for the loan. Morrison v. Mioton, 163 La. 1065, 113 So. 456 (1927). Whether or not a party has acted *692 in good faith depends on the facts and circumstances peculiar to each case.
In Brewster v. Yockey, 153 So.2d 489 (La.App. 4th Cir. 1963), our court concluded that a purchaser's single verbal application to one homestead did not constitute a good faith attempt to obtain financing when another homestead was apparently ready, willing and able to make the loan. In the instant case as in Brewster, supra, there is evidence that financing was available from other lending agencies.
Mrs. Katie Wainwright, purchaser's real estate broker, testified that had defendant sought to obtain financing from other lending institutions, he could have borrowed the $30,000.00 from other "agencies". Wainwright stated that no other attempts to arrange financing were made because defendant did not care to proceed with the sale. This testimony was supported by Mr. Damien Kinchen, an expert in real estate appraisal, who worked with Paul Powell, the listing agent for the seller and who testified that he could obtain the financing from a mortgage company, but was told by Powell that the Panzers had called off the sale.
However, in Katz v. Chatelain, 321 So.2d 802 (La.App. 4th Cir. 1975), we held that a purchaser's single application to a loan association constituted good faith where an appraisal was made by a central appraisal bureau and that appraisal was used by all of the homesteads in the place where the property was located, i.e., New Orleans.[1] Under the circumstances in the Katz case, since all homesteads used the same appraisal, a denial of a loan by one homestead, based on that appraisal, necessarily would result in a denial of the loan by other homesteads. See also, Garlete v. Rodriguez, 126 So.2d 182 (La.App. 4th Cir. 1961). In the instant case, no evidence exists that Pontchatoula Homestead utilize the Central Appraisal Bureau in arriving at an appraisal figure.
We conclude, under the circumstances, as did the trial judge, that defendant did not make a good faith effort to obtain financing in accordance with the agreement.
Having so concluded, we turn to a determination of the seller's duty to obtain financing under the terms of the agreement. As previously mentioned, the agreement places responsibility on the seller, as well as the purchaser, to obtain the loan. However, in the instant case, seller, in oral argument, contends that because defendant repudiated and refused to comply with the terms of the purchase agreement, the seller was relieved of any obligation to attempt to obtain a loan in the stipulated amount, and that under the circumstances, any such attempt to secure financing would have been vain and useless. We agree.
On May 21, 1973, within 30 days of the date of the agreement, the purchaser, in a letter addressed to his real estate agent, advised of the homestead's failure to approve the loan in the sum of $30,000.00, and suggested a reduction of the purchase price to the sum of $35,000.00. This offer was communicated to seller's agent on May 24. According to seller's agent, the $35,000.00 offer was conveyed to the seller and orally accepted. The purchaser's agent testified that on May 31, she was advised by the defendant-purchaser that he would not purchase the property for any price in excess of the appraised sum of $32,151.20. Thereafter, the purchaser's agent, on May 31, 1973, in a letter addressed to seller's agent, enclosed a cancellation agreement. In that letter, purchaser's agent advised seller's agent of defendant's intention not to proceed any further with the sale. Defendant's *693 expressed intention to withdraw from the sale relieved plaintiff of the responsibility of obtaining financing.
When one contracting party announces he will not honor his agreement, the other party is not required to tender performance since to do so would be vain and useless. Swanola Club v. Tanner, 209 So.2d 173 (La.App. 4th Cir. 1968). See also 19 La.L.Rev. 315 (1959). Therefore, in accordance with the sanctions imposed by the purchase agreement, in the event of purchaser's breach,[2] the seller is entitled to obtain forfeiture of the deposit.
We reject plaintiff's claim for attorney's fees. No evidence was offered in support of this demand.
Because we find no error on the part of the trial judge when he concluded the purchaser failed to make a good faith effort to obtain a loan in the amount required by the agreement, defendant is not entitled to avail himself of any of the sanctions[3] imposed by the agreement against the seller. It necessarily follows that the purchaser is not entitled to attorney's fees or damages for inconvenience and mental anguish as claimed by him in a reconventional demand.
Accordingly, the judgment awarding plaintiff $3,750.00, the amount of the deposit, together with interest and costs, is affirmed.
AFFIRMED.
NOTES
[1] The court in Katz, supra, noted that the various homesteads operating in New Orleans did not maintain separate real estate committees of appraisers.
[2] "* * * In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance. * * *"

"* * * Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the broker commission and all fees and costs incurred in enforcing collection and damages."
[3] "* * * In the event the seller fails to comply with this agreement within the time specified or for any other reason, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance, at his option. * * *"