385 So.2d 514 (1980)
Mrs. Arthur P. BURDON
v.
Robert HARVEY and W. G. Wiegand, d/b/a W. G. Wiegand Company.
No. 10949.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1980.
Rehearings Denied July 21, 1980.
*515 Mollere, Flanagan & Arceneaux, James T. Flanagan, Metairie, for plaintiff-appellant.
Babovich, McDowell & Bukaty, Wayne M. Babovich, New Orleans, for defendant-appellee.
Roy L. Price, Metairie, for W. G. Wiegand, d/b/a W. G. Wiegand Co.
Before GULOTTA, BOUTALL and GARRISON, JJ.
GULOTTA, Judge.
This dispute arises out of an agreement to buy and sell real property. On April 23, 1977, plaintiffs agreed to purchase, from Robert and Charlene Harvey, property located on Veterans Memorial Boulevard in Jefferson Parish for the sum of $236,500. The agreement was conditioned on the purchasers' ability to borrow $165,500 by a mortgage loan, with interest not to exceed 9%, payable over a 25-year period. The standard-form real estate agreement further stipulated that in the event the loan was unobtainable by the purchaser, seller or agent, within 45 days from date of acceptance, the contract would become null and void and the agent would be authorized to return the purchasers' deposit in full. The acceptance date was April 23, 1977 and the expiration date for the 45-day period was June 7, 1977. The plaintiff-purchasers deposited $5,000 with W. G. Wiegand Company, the real estate agent in this transaction. The act was to be passed on or before June 27, 1977.
The purchasers' efforts to obtain a loan from Weil Investment Company under the terms and conditions set forth in the agreement were unsuccessful. After subsequent inquiries by Dr. Burdon and his attorney to a bank and lending institutions in the area failed to result in a loan, plaintiffs discontinued their efforts and the date for passing the act of sale expired. Defendants subsequently sold the property to a third party for the sum of $225,000.
This litigation commenced when the Burdons filed suit against the Harveys and Wiegand for the return of the $5,000 deposit. In an answer and reconventional demand, the Harveys sought a judgment against plaintiffs in the sum of $31,500. This amount comprises the $5,000 deposit, together with the $11,000 difference between the sale price agreed upon between the Burdons and the Harveys and the price for which the property was subsequently sold, plus $15,500 in repairs allegedly made to the property in accordance with the stipulations contained in the buy-and-sell agreement. The Harveys, by a separate pleading, third-partied Wiegand for their $31,500 demand.
The trial judge dismissed plaintiffs' suit and also dismissed the Harveys' reconventional demand. However, he then rendered a judgment in favor of the Harveys against Wiegand in the sum of $5,000, with legal interest from date of judicial demand. In his reasons for judgment, the judge concluded that plaintiffs must "forfeit" the $5,000 because the seller had offered to "carry the financing". He pointed out that plaintiffs continued to seek financing after the 45-day period and they were aware that the Harveys would provide the necessary financing. He finally determined that plaintiffs simply decided not to go forward with the purchase.
Plaintiffs, appealing, seek return of the $5,000 together with attorney's fees. Wiegand, appealing, claims the trial judge erred in assessing legal interest from date of judicial demand on the $5,000 deposit. In an untimely answer to the appeal, the Harveys claim the trial judge erred when he denied their claim to damages and attorney's fees.[1]
*516 It is clear that the Burdons made good-faith attempts, both before and after the expiration of the 45-day period, to obtain financing from lending institutions for the credit portion of the purchase price.[2] The central issue is whether Harvey made a timely offer to finance the property within the terms and conditions set forth in the agreement. The trial judge concluded that the offer had been made and communicated to plaintiffs and that plaintiffs simply refused to accept the offer. We conclude that although offers were made prior to the expiration of the 45-day period to finance, the offer to finance under the same terms and conditions contained in the agreement was not communicated by Wiegand until after the 45-day period.
Both Robert Harvey and Wiegand testified that, several times prior to the expiration of the 45-day period, Harvey advised Wiegand he was willing to take a second mortgage, payable in one year, to facilitate the financing. Wiegand testified he communicated this offer to Burdon each time it was made by Harvey. Burdon, on the other hand, testified he did not recall receiving any offers of second mortgage financing from Harvey on or prior to June 7, 1977 (the last day of the 45-day period.)
Since these offers were not under the terms and conditions of the agreement, Burdon was not required to accept them. See Katz v. Chatelain, 321 So.2d 802 (La. App. 4th Cir. 1975); Woods v. Austin, 347 So.2d 897 (La.App. 3rd Cir. 1977).
Furthermore, according to Harvey, on June 3, 1977, four days before the expiration of the deadline, he called Wiegand's office to ascertain if Burdon had acquired financing. He was advised that Wiegand was away on vacation but that Burdon's latest loan application had been rejected. Harvey stated that he then called Wiegand in Florida, where the latter was vacationing, to advise him of this development. In that telephone conversation, Harvey once again offered to finance the property, but unlike earlier offers, this offer to finance was under the same terms and conditions as set forth in the agreement. He left it up to Wiegand to convey this offer to the Burdons.
Wiegand remembered receiving Harvey's telephone call while he was in Florida, but did not call Burdon while he was on vacation. Instead, Wiegand waited until he returned from vacation and conveyed Harvey's offer to the Burdons on June 11, 1977 (four days after the expiration of the 45-day period.) Burdon, on the other hand, testified that he was not informed of Harvey's willingness to assist in financing until Harvey himself called Burdon, after the expiration of the 45-day period. This communication took place on June 23, 1977. By this time, Burdon had decided he no longer wanted to purchase the property and refused Harvey's offer.
This evidence considered, we find that Harvey did inform Wiegand prior to the 45-day expiration period that he would finance the credit part of the sale under the same terms and conditions set forth in the agreement. Nevertheless, Wiegand failed to timely communicate this offer to the Burdons. At the time of the expiration date for financing the sellers had not acquired financing under the terms of the agreement, although they made the required effort to do so.
*517 In Liuzza v. Panzer, 333 So.2d 689 (La. App. 4th Cir. 1976), we stated that where a purchaser, through no fault of his own, is unable to obtain the loan stipulated in the purchase agreement, he is relieved from his obligation to purchase and is entitled to the return of his deposit. Accordingly, we conclude that Burdon is entitled to the return of the $5,000 deposit.
On the other hand, Harvey timely conveyed to Wiegand his willingness and ability to provide the necessary financing to the plaintiff-purchasers in accordance with the terms and conditions set forth in the agreement to purchase. The suspensive condition, i. e., "Should the loan stipulated above be unobtainable by the purchaser, seller, or agent ..." (emphasis ours) was fulfilled by Harvey. Plaintiffs, had they learned of the offer within the 45-day period, would have been obligated to go forward with the purchase, since the offer was made under the same terms and conditions as stipulated in the agreement. Harvey timely communicated the offer to Wiegand, and it was through Wiegand's fault that it was not timely conveyed to the Burdons.
Does Wiegand's failure entitle the Harveys to recover damages against him under their third-party demand? The Civil Code states that a broker is an agent for both parties, having a duty toward both, and is answerable for his fraud or fault. LSA-C.C. arts. 3016, 3017, 3018;[3]Uhlich v. Medallion Realty, Inc., 334 So.2d 788 (La.App. 4th Cir. 1976), writ denied 338 So.2d 701. On the other hand, there is some disagreement whether a real estate broker is truly within the purview of the mandate articles of the Civil Code. See Leggio v. Realty Mart, Inc., 303 So.2d 920 (La.App. 1st Cir. 1974), writ refused, 307 So.2d 629; Fleming v. Romero, 342 So.2d 881 (La.App. 3rd Cir. 1977), writ refused 345 So.2d 50; Yiannopoulos, "Brokerage, Mandate, and Agency in Louisiana: Civilian Tradition and Modern Practice," 19 La.L.R. 777 (1959) which suggests brokerage is a sui generis contract which may or may not coincide with the agency and mandate articles. The line of cases following that idea states that "the real estate broker's duties are limited to those which can be analogically drawn from LSA-R.S. 37:1454 and from the customs and practices of real estate brokers in general."[4]Fleming v. Romero, supra, at 884; see also, Leggio v. Realty Mart, Inc., supra, and Amato v. Latter and Blum, Inc., 227 La. 537, 79 So.2d 873 (1955).
Our Supreme Court has stated that a broker's duty includes the responsibility to convey offers between the parties, and he may be liable for damages for his failure to do so. Amato v. Latter and Blum, Inc., supra. It has not been conclusively established, however, whether the broker's duty to convey offers includes offers for financing or only offers to buy and sell.
We cannot say a broker would be liable in every circumstance for his failure to transmit a seller's offer to finance to the purchaser. In this case, however, we believe Wiegand's duty was regulated under the terms of the agreement to purchase and sell, which was signed by the Burdons, the Harveys, and Wiegand's representative. The agreement stated, "Should the loan stipulated above be unobtainable by the purchaser, seller or agent within 45 days from date of acceptance hereof, this contract shall then become null and void, and the agent is hereby authorized to return the purchaser's deposit in full." The agreement afforded the agent the right and indeed *518 the responsibility to seek financing. In fact, Wiegand was handling the loan application with Weil Investments upon which the parties were relying to consummate the sale. Upon learning of the rejection of the application from Wiegand's office, Harvey made the offer to the vacationing Wiegand of his willingness and ability to finance under the terms and conditions of the agreement. In this sense, therefore, W. G. Wiegand Company was integrally involved with efforts to obtain financing and Wiegand's failure to convey Harvey's offer to the Burdons constituted a breach of his obligations under the agreement, making him liable in damages to the Harveys.
Having concluded Wiegand is liable to the Harveys, we examine the extent to which they can recover from him. As stated earlier in this opinion, the Harveys' answer to the appeal was late. Accordingly, this court cannot accord them greater relief than they received at the trial level. The original judgment found Wiegand liable to the Harveys in the amount of $5,000 plus legal interest from the date of judicial demand. Although the basis upon which we grant judgment in the Harveys' favor differs from that on which the trial judge apparently based his decision, we find Robert and Charlene Harvey entitled to the same relief they received in the district court.
Accordingly, the judgment of the district court is reversed in part and affirmed in part, amended, and recast as follows:
It is hereby ordered, adjudged and decreed that there be judgment in favor of Jane Talmige, wife of/and Arthur P. Burdon, and against William G. Wiegand, d/b/a W. G. Wiegand Company, and Robert and Charlene Harvey, decreeing a return of the deposit and ordering defendant Wiegand to return to plaintiff the $5,000 placed on deposit with him by plaintiff.
It is further ordered, adjudged and decreed that the reconventional demand of Robert Harvey and Charlene Harvey against plaintiffs be dismissed.
It is further ordered, adjudged and decreed that there be judgment on the third party demand in favor of Robert Harvey and Charlene Harvey and against William G. Wiegand, d/b/a W. G. Wiegand Company, in the sum of $5,000 with legal interest from date of judicial demand. Each party is to bear their own costs in these proceedings.[5]
REVERSED IN PART, AFFIRMED IN PART, AMENDED AND RECAST.
NOTES
[1] Under LSA-C.C.P. art. 2133 an appellee's answer to an appeal must be filed within 15 days after the return day or the lodging of the record, whichever is later. In this case, the court reporter received two extensions on the original return date, so the last return date was Sept. 17, 1979. The record was lodged on that date. The Harveys' answer to the appeal was not filed until Oct. 9, 1979, well over 15 days after the return date and date of lodging the record. Appellee has filed before us an affidavit from the court reporter, stating that he misinformed appellee's counsel of the return date and this is why appellee's answer was late. We do not consider the affidavit. Moreover, if we were to consider it, the affidavit does not justify the lateness of appellee's answer. The order setting the final return date was available for appellee's inspection and it was appellee's responsibility to ascertain the extended return day and the day the record is lodged.
[2] The trial judge erred in implying, in his reasons for judgment, that because plaintiffs continued efforts to obtain the loan after expiration of the 45 days, they waived the suspensive condition contained in the agreement. See Pullen v. Kinler, 375 So.2d 727 (La.App. 4th Cir. 1979).
[3] LSA-C.C. articles 3016, 3017 and 3018 read as follows:

"Art. 3016. The broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatory of both."
"Art. 3017. The obligations of a broker are similar to those of an ordinary mandatory, with this difference, that his engagement is double, and requires that he should observe the same fidelity towards all parties, and not favor one more than another."
"Art. 3018. Brokers are not responsible for events which arise in the affairs in which they are employed; they are only, as other agents, answerable for fraud or faults."
[4] R.S. 37:1454 was amended and re-enacted by Acts 1978, Number 514, § 1, and this statute now appears as R.S. 37:1455.
[5] We deny any entitlement to attorney's fees by either the purchaser or the seller, because of our conclusion that neither purchaser nor seller was at fault in the failure to complete sale of the property. We note, however, that the provision in this agreement under which the parties claim attorney's fees has been held by this circuit to apply only to agent's commissions and not to recovery of attorney's fees. See Lanusse v. Gerrets, 357 So.2d 45 (La.App. 4th Cir. 1978).