377 So.2d 871 (1979)
Edward J. KRAFT
v.
Elsa M. BAKER, Wife of/and Robert A. Baker.
No. 10750.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1979.
*872 Donelon, Cannella & Donelon, Thomas G. Donelon, Metairie, for plaintiff-appellee.
Satterlee, Mestayer & Freeman, A. D. Freeman, New Orleans, for defendants-appellants.
Before REDMANN, LEMMON and BOUTALL, JJ.
LEMMON, Judge.
This is an appeal by the seller from a judgment granting the buyer's demand for return of his deposit which had been furnished in connection with a contract for the sale of immovable property.
The parties executed the written contract for the $75,000.00 sale on January 14, 1978, and the buyer furnished a check for $1,500.00 to cover the stipulated deposit. The contract included the following provisions:
"This sale is conditioned upon the ability of purchaser to borrow upon this property, as security, the sum of FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLARS by a mortgage loan or loans at a rate of interest not to exceed 9% per annum interest and principal, payable on or before 30 years in equal monthly installments.
* * * * * *
"Act of Sale at expense of purchaser to be passed before lending agency's notary, on or prior to February 14, 1978.
* * * * * *
"In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited without formality beyond tender of title to purchaser; or the seller may demand specific performance."
*873 A day or two later the buyer stopped payment on the check, and the parties agreed to dissolve the contract. However, the parties agreed later to reinstate the original contract on the condition that the buyer furnish a $2,000.00 deposit by cashier's check, and on January 20, 1978 the buyer furnished the deposit and noted on the contract the change in the amount of the deposit from $1,500.00 to $2,000.00.
The buyer again attempted to withdraw the following day, the reason for the withdrawal being a primary dispute in this litigation, and both parties sought legal counsel.
Eventually the buyer sued for the return of his deposit, alleging that the contract had become null and void because he had been unable to obtain financing. The seller answered, denying that the buyer had been unable to obtain financing and further alleging that he had sent the buyer a letter on February 1 which set the act of sale for February 13 and offered to provide the required financing for $15,000.00.
On the day of trial the buyer orally amended his petition (over objections) to assert nullity of the contract on the grounds of error, contending that he had intended to offer 20% down ($15,000.00), with the balance ($60,000.00) to be financed, but had transposed the figures so that the financing provision referred to a loan of only $15,000.00.
At trial the seller testified: The buyer's excuse for backing out, both after the original deposit and after the deposit by cashier's check, was his girl friend's dislike of the neighborhood. The buyer never discussed the amount to be financed, either in their original negotiations or after the contract was signed, and never mentioned any problem about obtaining financing in either attempt to withdraw from the contract. When the buyer attempted to withdraw the second time, he contacted his lawyer, who wrote the February 1 letter setting the time for the act of sale. He appeared at the act of sale, but the buyer did not show up.
On the other hand, the buyer, a real estate broker for 25 years, testified: He attempted to withdraw when he discovered his mistake in the amount to be financed. (He did not recall why he stopped payment on the check.) The seller at first agreed, then declined to refund the deposit and sought counsel. He attempted to obtain homestead financing for $60,000.00, because he wanted to buy the house, but his application was rejected. (His only documentary evidence was a financial disclosure sheet required by federal law; he produced no applications or letters of rejection and no testimony of homestead officials.) He denied that he received the February 1 letter setting the sale and offering financing by the seller.[1]
The buyer's amended petition might have presented a question of law as to the effect of his mistake on the validity of the contract. However, the trial judge's extensive reasons for judgment do not mention the error issue, raising the inference that he rejected the facts which would present that issue. This rejection appears to be clearly correct, in view of the buyer's failure to correct the alleged error when the contract was amended and his failure to communicate the alleged error, in pleadings or correspondence, until the morning of trial.
The trial court expressly found that the buyer had failed to prove he made a good faith effort to obtain financing. The financing provision made the contract one subject to a suspensive condition, but *874 under such a provision the buyer has an implied obligation to make a good faith effort to obtain financing. If the buyer fails to do so, the condition is deemed waived by the buyer and is considered as fulfilled, and the buyer is estopped from asserting the nullity of the contract based on inability to obtain financing. C.C. art. 2040; Groghan v. Billingsley, 313 So.2d 255 (La.App. 4th Cir. 1975). However, despite this finding as to the financing condition the trial court ordered the return of the deposit on the basis that the seller failed to make a proper tender of title. While we agree the record supports a finding that the buyer did not make a good faith effort to obtain financing, we disagree with the conclusion that the seller did not make a tender of title within the contemplation of the contract.
The seller's attorney mailed a notice to the buyer of the time and place of the sale, and the seller appeared at the appointed time and place, ready and willing to transfer title. The trial court found this was an insufficient tender of title because the seller's wife did not appear (she was on call) and the seller's attorney did not prepare the documents (he testified this could be completed in a matter of minutes) and did not obtain certificates, survey, or title examination.
Thus, the determinative issue is whether the actions of the seller constituted a tender of title contemplated by the contract as the only formality necessary to give the seller the right to declare the deposit forfeited.
The apparent purpose for the contractual requirement of tender of title by the seller is to provide the buyer with an explicit opportunity to comply with his contractual obligations or to declare expressly or implicitly his refusal to do so, for whatever reason. By providing notice of a definite and reasonable time and place for the sale and by presenting himself at that time and place (with his wife available and the formal act also available within a matter of minutes), the seller has fulfilled the purpose and the spirit of the contractual requirement.[2]
Of course, appearance by both husband and wife with prepared documents, attested to by the proces-verbal of the notary public, would have constituted better proof of tender of title. However, the reasonably believable proof offered by the seller here is uncontradicted by evidence or circumstances, and the proved manner of tender was adequate to fulfill the contractual requirement, particularly when one considers that the contracting parties agreed upon this provision as a procedure to forfeit the deposit "without formality". To require more formality than was undertaken here would be contrary to the contracting parties' express intention to lessen formalities.[3]
Accordingly, the judgment of the trial court is reversed, and it is now ordered that plaintiff's suit for the return of his deposit be dismissed. Costs of this appeal are assessed to plaintiff.
REVERSED AND RENDERED.
REDMANN, J., dissents and assigns reasons.
REDMANN, Judge, dissenting.
Heatherly v. Rosenberg, La.App. 4 Cir. 1979, 372 So.2d 766, writ refused, La., 375 So.2d 957, held (rightly or wrongly) that a *875 vendor's (orally authorized) lawyer's letter reciting that the vendor "stands ready to tender title" constituted tender of title within a penal clause worded identically as ours is.
The present case involves a lawyer's letter reciting that one of the two vendors will tender title at a specified time and place. That does not constitute a tender by the other vendor (who admittedly was not present at the specified time and place). Heatherly does not control.
The contract does not oblige the purchaser to suffer forfeiture of the deposit "without formality," but "without formality beyond tender of title to the purchaser." Forfeiture is not available without tender of title. It is a generous spirit that reads this clause liberally, but it is a spirit inconsistent with the clause's words imposing a penalty and inconsistent with the law's provision that "the penalty is forfeited only when [the obligor] is in default," La.C.C. 2126.
The judgment should be affirmed.
NOTES
[1] The letter was sent by registered mail to 1951 Veterans Boulevard (the address printed on the form offer), and the receipt was signed by C. George. The buyer testified that he sold the building at that address two months before this transaction and that he did not know anyone named C. George.

In rebuttal, the seller argues the inference raised by the buyer's telephone call to seller's counsel for the purpose of discussing compromise shortly after this letter was mailed and by the fact that a later registered letter to the buyer's post office box (admitted to be the correct address) was returned unclaimed, although the post office showed two notices had been given. The seller's attorney also testified that the buyer failed to return telephone calls.
[2] We note that the seller was not obliged by this contract to obtain certificates, survey or title examination, or even to prepare the act of sale. His sole obligation was to furnish a merchantable title and to execute the document conveying that title to the buyer.
[3] Putting in default under C.C. arts. 1913 and 1914 contemplates the obligee's offer to perform and to receive performance under a commutative contract when the obligations are to be performed at the same time. No special form is required to communicate this offer. Litvinoff, 7 Louisiana Civil Law TreatiseObligations, Book 2, § 231 (1975).

While the codal term "putting in default" is not the equivalent of the contractual term "tender", the concept of forfeiture "without formality beyond tender" suggests that no special form of tender should be required beyond preponderating proof that the seller offered to perform and to accept performance.